UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DOWNRANGE OPERATIONS AND
TRAINING, LLC                                                                    PLAINTIFF

V.                                                          CIVIL ACTION NO: 3:12-CV-65-DPJ-FKB

MGS SALES, INC.                                                                  DEFENDANT

ORDER

This diversity action is before the Court on the motion of Defendant MGS Sales, Inc. to

dismiss for lack of personal jurisdiction [4], or alternatively, to transfer the case [6] to the

Western District of North Carolina pursuant to 28 U.S.C. § 1404(a).  Plaintiff Downrange

Operations and Training, LLC has responded in opposition.  The Court, having considered the

memoranda and submissions of the parties, concludes that Defendant's motion to dismiss should

be granted and the motion to transfer should be denied as moot.

I.       Facts and Procedural History

Plaintiff Downrange is a Mississippi limited liability company and a government

contractor.  In August 2011, Downrange decided to bid on a procurement for military supplies

solicited by the United States Department of State ("DOS").  Downrange employee Billie J.

Smith researched potential sources for the supplies and located the website of Defendant MGS

Sales, Inc., a North Carolina corporation with its principal place of business in North Carolina.

MGS's website, www.armytents.com, describes MGS's business and products and provides

contact information for the company for placing orders by phone, fax, or email.  No orders may

be placed through the website itself.

On August 7, 2011, Smith contacted MGS by phone to ask about MGS's ability to supply tents and tarpaulins, and then sent an email to "admin@armytents.com," the email address for MGS sales manager Yarriv "Jerry" Diskin.  Smith and Diskin spoke via telephone the next day concerning Downrange's needs.[1]  After their phone conversation, the parties corresponded back and forth via email about prices for the various items Downrange sought.  Smith's email signature listed no physical address for Downrange, though it did list two telephone numbers with a "601" area code and one cell phone number with a "228" area code.[2]

On August 11, 2011, Diskin sent Smith an email with a proposal attached.  The proposal noted "Prices are FOB Asheville, NC."  Diskin Aff. [4–1] Ex. C.  Diskin claims he did not know where Downrange was located at this time, though Smith says Diskin asked if the items outlined in the quote would require shipment to Mississippi and she told him they would not.  *Compare* Smith Aff. [7–1] ¶ 17, *with* Diskin Aff. [4–1] ¶ 6.  Diskin told Smith that Downrange had to make full payment before MGS would be required to ship the materials.

In September 2011, Downrange was awarded the DOS contract, and Diskin and Smith discussed moving forward with the procurement of materials from MGS.  In October, Smith requested an invoice "so [Downrange] can start sending you funding for purchase."  Smith Aff. [7–1] Ex. E.  Diskin drew up an invoice, addressing it to Downrange at a physical address in Jackson, Mississippi, that Diskin found on Downrange's website, and emailed the invoice to Smith.  Downrange paid the invoice in full from its bank account in Mississippi by wiring funds

---

[1]The parties dispute whether Smith called to follow up on her email or whether Diskin initiated the follow-up call to Smith.  *Compare* Smith Aff. [7–1] ¶ 12, *with* Diskin Aff. [4–1] ¶ 5.

[2]The "601" area code covers central Mississippi, while "228" is the area code for the Mississippi Gulf Coast.

to MGS's account in North Carolina, though Diskin contends that the location of Downrange's account was "unspecified" to MGS.  Downrange's shipping company then took possession of the goods from MGS in North Carolina and transported them to Chesapeake, Virginia.  Some of the goods may also have been delivered to Virginia via trucks driven by MGS employees.  The parties agree that no goods ever entered Mississippi.

Downrange filed suit in January 2012, claiming the goods delivered from MGS were non-conforming.  Specifically, Downrange brings claims against MGS for breach of contract, tortious breach of contract and bad faith, fraud in the inducement, breach of express warranty, breach of implied warranty of merchantability and fitness, and breach of implied covenants of good faith and fair dealing.  MGS now moves to dismiss the action for lack of personal jurisdiction pursuant to Rule 12(b)(2) or, in the alternative, to transfer venue of this action to the Western District of North Carolina.  Downrange opposes the motions.

II.     Analysis

    A.     Motion to Dismiss for Lack of Personal Jurisdiction

In determining if personal jurisdiction exists, the Court engages in a familiar two-part inquiry.  *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).  First, the Court must determine whether jurisdiction is proper under Mississippi's long-arm statute and second, whether jurisdiction complies with the requirements of due process.  *Id.*; *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997).  Courts generally examine the long-arm statute first.  *See Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989).

Where the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie case that jurisdiction is

3

proper.  *Quick Techs., Inc. v. Sage Grp., PLC*, 313 F.3d 338, 343 (5th Cir. 2002).  "The district

court is not obligated to consult only the assertions in the plaintiff's complaint in determining

whether a prima facie case for jurisdiction has been made.  Rather, the district court may consider

the contents of the record at the time of the motion, including affidavits. . . ."  *Paz*, 445 F.3d at

812.  In addition, the Court "must accept as true [the plaintiff's] uncontroverted allegations, and

resolve in its favor all conflicts between the facts contained in the parties' affidavits and other

documentation."  *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir. 2000).

Thus, this order accepts Downrange's factual assertions where dispute exists along with MGS's

record evidence when undisputed.

        1.      Long-Arm Statute

As the parties note, three avenues exist for jurisdiction under Mississippi Code

§ 13-3-57—the "tort" prong, the "contract" prong, or the "doing-business" prong.  Downrange

contends that it meets all three.  The Court will address these issues in summary fashion before

taking a closer look at the due process issue.  Looking first to the tort prong, Downrange has

shown only consequential injuries occurring in Mississippi, which forecloses this avenue to

personal jurisdiction.  *See Smith v. Temco*, 252 So. 2d 212, 216 (Miss. 1971); *Jobe v. ATR Mktg.,

Inc.*, 87 F.3d 751, 754 (5th Cir. 1996).  The "doing-business" and "contract" prongs present

closer questions.  *See ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012)

(holding that "doing-business" prong is met if defendant performs "any character of work in this

state") (citation omitted).  Nevertheless, Downrange must still establish that the exercise of

personal jurisdiction over MGS comports with due process, and it does not.

2.      Constitutional Due Process

The Court's exercise of personal jurisdiction over a defendant must comport with due process. *Paz*, 445 F.3d at 812. The due process inquiry consists of two considerations: (1) the nonresident defendant must have some minimum contact with the forum resulting from its own affirmative act, and (2) maintenance of the suit must comport with "traditional notions of fair play and substantial justice." *Stuart v. Spademan*, 772 F.2d 1185, 1190–91 (5th Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Under the first prong of the due process analysis—the minimum contacts test—personal jurisdiction may be general or specific. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006). Here, Downrange asserts that either general jurisdiction or specific jurisdiction over MGS is appropriate. Pl.'s Mem. [9] at 13.

a.      General Jurisdiction

General jurisdiction requires that the defendant's purposeful contacts with the forum state be "substantial" and "continuous and systematic." *ITL Int'l, Inc.*, 669 F.3d at 498–99; *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). As the Court of Appeals for the Fifth Circuit noted in *Johnston*:

> The "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted). "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction . . . ." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (citations omitted). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) [citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)].

*Johnston*, 523 F.3d at 609–10.

The undisputed facts in this case fail to reflect a basis for this Court to exercise general jurisdiction over MGS.  To begin with, MGS is not licensed to do business in Mississippi, it has no office or accounts or physical presence in Mississippi, no employee or representative has gone to Mississippi for any purpose, and MGS has never appointed an agent for service of process in Mississippi.  Diskin Aff. [4–1] ¶ 3.  Moreover, all MGS's contacts with Mississippi, including this transaction, were initiated by the buyers, not MGS, and those transactions never involved MGS having title or possession of goods in Mississippi.  *Id.* ¶ 4.  Apart from the transaction at issue in this case, only 11 of the company's 2,000 sales since the company opened in 2003 have involved goods shipped to Mississippi, and only twice has MGS shipped goods elsewhere at the request of a Mississippi buyer.  *Id.*  The total amount for these thirteen transactions is less than $20,000, out of approximately $6.5 million in overall sales.  *Id.*  This represents less than 1% of MGS's business since 2003 by number of transactions (0.65%) and dollar amount (0.31%).

Downrange spends little time addressing these facts or the general jurisdiction issue.  Instead, it merely states in conclusory form that the facts establish "continuous systematic contacts with the state of Mississippi . . . .  The nature of its business in Mississippi is the same as the nature of its business in North Carolina."  Pl.'s Mem. [9] at 13.  Downrange offers no supporting authority for this position, and the Court concludes that MGS's contacts with Mississippi were neither "substantial" nor "continuous and systematic."  *See Johnston*, 523 F.3d at 614 (finding no general jurisdiction over company that sold products to Texas where "neither the total amount of sales nor the percentage of annual sales is substantial or regular enough to

create a general presence in Texas"; Texas sales made up 1.7%, 0.5%, 1.1%, and 2.5% of total

global sales during the relevant years).[3]

b.      Specific Jurisdiction

In contrast to general jurisdiction, specific jurisdiction may exist "where there are only

isolated or sporadic contacts, so long as the plaintiff's claim relates to or arises out of those

contacts." *ITL Int'l, Inc.*, 669 F.3d at 498–99.   For the Court to have specific jurisdiction over

MGS, "due process requires (1) minimum contacts by the defendant purposefully directed at the

forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that

the exercise of jurisdiction over the defendant be fair and reasonable." *Id.*

> Due process first requires that a defendant have sufficient contacts with the forum
> state such that it "should reasonably anticipate being haled into court there."  This
> requirement can be satisfied by a showing that the defendant "purposely directed
> its activities toward the forum state or purposely availed itself of the privileges of
> conducting activities there."  The defendant's contacts must be more than
> "random, fortuitous, or attenuated, or of the unilateral activity of another party or
> third person."

*Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *World-Wide Volkswagen

Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir.

2009); *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002)); *see also

Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007) ("A plaintiff's or

third party's unilateral activities cannot establish minimum contacts between the defendant and

forum state.") (citing *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir.

1983)).   Moreover, the defendant's contact with the forum state must rest on more than the "mere

---

[3]It is worth noting that MGS's website was a "passive" website and could not, therefore,
provide the basis for general jurisdiction. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336–37
(5th Cir. 1999).

fortuity that the plaintiff happens to be a resident of the forum." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985). Thus, "[a] single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted, but merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc.*, 481 F.3d at 311 (citations omitted).

Downrange premises its plea for specific jurisdiction on three primary arguments: (1) Mr. Diskin knew Ms. Smith and/or Downrange was located in Mississippi based on telephone calls with Ms. Smith; (2) MGS sent via email quotes to Downrange in Mississippi in response to Downrange's request; and (3) after Downrange secured the DOS contract, MGS emailed an invoice to Mississippi, listing Downrange's physical address in Mississippi, in response to Downrange's request. Pl.'s Mem. [9] at 15–16. Though the Court accepts the factual predicate to these arguments, they fail to establish specific jurisdiction.

Downrange's first argument—that Diskin knew Downrange is located in Mississippi—is not alone sufficient to create specific jurisdiction because "merely contracting with a resident of the forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc.*, 481 F.3d at 311 (citations omitted). Thus, Downrange's status as a Mississippi corporation, without more, would be "random, fortuitous, or attenuated." *ITL Int'l, Inc.*, 669 F.3d at 499 (citations omitted). The Court therefore looks beyond this undisputed fact to determine whether MGS "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there." *Id*.

The email quotes and invoice MGS sent to Downrange are likewise insufficient to establish specific jurisdiction because the exchange of communications between parties while

developing a contract is not purposeful availment as defined by the courts. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) ("[T]he exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law."); *Hydrokinetics, Inc.*, 700 F.2d at 1029 ("As for the exchange of communications between Texas and Alaska in the development of the contract, that in itself is also insufficient to be characterized as purposeful activity invoking the benefits and protections of the forum state's laws."); *see also R & B Falcon Drilling (Intern. & Deepwater), Inc. v. Noble Denton Grp.*, 91 F. App'x 317, 320 (5th Cir. 2004) ("An exchange of communications between two parties, one of whom is located in the forum state, in furtherance of a contract, will not generally constitute purposeful contact with the forum state for purposes of jurisdiction.") (citing *Holt Oil & Gas Corp.*, 801 F.2d at 778; *Colwell Realty Invs. v. Triple T Inns*, 785 F.2d 1330, 1334 (5th Cir. 1986)); *R. Clinton Constr. Co. v. Bryant & Reaves, Inc.*, 442 F. Supp. 838, 850 (N.D. Miss. 1977) (distinguishing *Miller v. Glendale Equip. & Supply, Inc.*, 344 So. 2d 736 (Miss. 1977)) ("The isolated act of receiving a telephone call and supplying goods from a point outside Mississippi, does not rise to such quality or substance as to satisfy fundamental notions of fair play and substantial justice required by due process.").

Finally, Downrange's reliance on *McGee v. International Life Ins. Co.*, is misplaced. 355 U.S. 220 (1957). In *McGee*, the Supreme Court found a Texas company was subject to a California court's jurisdiction where the Texas company mailed a certificate and offer of reinsurance to the California resident, and the resident accepted in California and mailed of all premium payments from California to Texas. *Id.* Here, by contrast, it was *Downrange* who

9

solicited business from MGS in North Carolina and initiated the contact between the two parties. Smith Aff. ¶¶ 8–12.  The Fifth Circuit has distinguished *McGee* in such situations.  *See Life Partners, Inc. v. Zurich Austl. Ltd.*, 176 F.3d 480, at *2 n.1 (5th Cir. 1999) (unpublished decision) (affirming no personal jurisdiction and distinguishing *McGee* because there "the out-of-state defendant affirmatively sought out and assumed responsibility for the insurance policy in question and was not brought into contact with the forum state merely through the unilateral actions of another"); *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 918 (5th Cir. 1987) ("This case is unlike *McGee v. International Life Insurance Co.*, . . . in which the solicitation of a single insured was sufficient to establish personal jurisdiction over the defendant insurer.  The undisputed facts in this case show that the plaintiffs solicited the transactions. They went to the defendants in South Carolina, rather than being sought out by the defendants.").

In this case, it is a "mere fortuity" that Downrange was located in Mississippi, and "purposeful availment of the privilege of conducting activities within the forum state required by the due process clause cannot be inferred from such a 'mere fortuity.'"  *Patterson*, 764 F.2d at 1147 (citations omitted).  This transaction resulted from Downrange's unilateral act of contacting MGS in North Carolina rather than any advertising or other business activities by MGS directed to the state of Mississippi; Downrange contracted to accept the goods, FOB Asheville, NC; and the goods were so delivered without ever passing through Mississippi.  In essence, a Mississippi corporation contacted an out-of-state company and agreed to purchase and accept goods from

that entity at its out-of-state location.  These facts fail to establish specific jurisdiction, and MGS's motion is due to be granted for lack of sufficient minimum contacts with the forum.[4]

B.     Motion to Transfer Venue

As an alternative to dismissal, MGS requests that the Court transfer the case to the Western District of North Carolina under 28 U.S.C. § 1404(a).  Under that section, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  This statute presupposes that the forum court actually has jurisdiction, which is lacking here.  Because the Court finds it lacks personal jurisdiction over MGS, the portion of MGS's motion seeking the alternative relief of venue transfer is denied as moot.  In any event, the Court would find that the factual record is currently insufficient to decide the motion to transfer venue.

IV.     Conclusion

For the foregoing reasons, the Court finds that Defendant MGS's motion to dismiss for lack of personal jurisdiction [4] should be granted, and Downrange's claims are dismissed without prejudice to re-filing in another forum.  Because the Court grants MGS's motion to dismiss, it denies MGS's motion to, in the alternative, transfer the case [6] as moot.

---

[4]Had Downrange established sufficient minimum contacts, MGS would have the burden of showing the second prong, an issue it addressed in conclusory fashion.  But because Downrange failed to meet its burden, there is no need to examine whether jurisdiction here would meet "traditional notions of fair play and substantial justice."  *McFadin*, 587 F.3d at 761 ("Finding no minimum contacts, we need not inquire into fairness.").

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

**SO ORDERED AND ADJUDGED** this the 21ˢᵗ day of June, 2012.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE